So, we will hear argument next in number 21-2113 in Re Killian. Mr. Mathis. Yes, Your Honor. My name is Berman York Mathis. I am representing Re Killian. My argument starts by saying that this is an issue that has already been settled by the Supreme Court in Bilski. Particularly in Bilski, the Patent Office rejected the claims in Bilski under mental steps. It was overturned by the initial panel at the Federal Circuit, then reaffirmed in Bonk. Whereafter, when it went to the Supreme Court, the Supreme Court rejected the mental steps and pursued an evidence-based approach. Mr. Mathis, I thought Bilski was about the machine or transformation test. That was one issue about that, but it was more than just that. It's a long opinion, but the heart of Bilski is twofold. One, it rejected the mental steps approach of the Patent Office. Two, it went after an evidence-based approach to consider what is well-known, routine, and conventional. And in this case, there's no evidence that shows that the present claims forget the computer, that the underlying business method, which is an interaction between various parties that is, in this case, facilitated using a computer system, but the underlying business method is not well-known, routine, conventional. And indeed, there's a mountain of evidence that Appellate Killian submitted to the Patent Office, including 55 separate documents. And in this case, the Patent Trial and Appeal Board basically did a runaround by switching the basis from well-known, routine, and conventional to mental steps. And I put forth to you that the Supreme Court case law is still controlling. The second argument you see is one that goes right to the heart of the Fifth Amendment due process of law. Mr. Mathis, what do we do about Gottschalk v. Benson, which called out, among other things, mental processes as being an ineligible subject matter? And then the Mayo decision from a decade ago quoted that very statement of law from Benson. Okay, well, there's two parts to Benson. There's Claim 8 and Claim 13. Claim 8 involved a re-entrant shift register, a piece of computer hardware. I'm just talking about the quote that says there's a number of things that are not patent eligible. Phenomenon of winter, and then mental processes, abstract intellectual concepts, etc. Well, and here's the problem with this whole mental processes approach. Well, first of all, Mayo did not rely upon Benson. It raised some language, but it certainly didn't rely upon it. What could have – Bilski, which does rely on hardware, they certainly could have said, hey, this is all mental steps. They rejected that approach. What do we do about our own panel decisions that have multiple times found different kinds of claims to be ineligible because they're directed to mental processes? I mean this panel this morning, we're bound by those decisions. You're more bound by Supreme Court than your own decisions. I would put forth that first. And in this case, Bilski controls, so does Alice Court. Both of those rejected mental steps. And when it comes down to your own, I mean there's a lot of opinions that I might agree with if you had relied on mental steps. For example, I will bring up electric power group. There was no computer in there. I disagree with the reasoning, but I think the output, if you'd actually had argued mental steps, might have been violent. Could you tell us where in Alice did the Supreme Court reject anything about – reject the idea that mental processes should not be – It was the basis – yes, Your Honor. They didn't say it expressly, but it was the basis of the Federal Circuit decision in Bonk. And basically Alice Court repeated Bilski. And Bilski was an out-and-out rejection of mental steps. Where in Bilski did the Bilski Supreme Court decision do that? It doesn't say it expressly, but again, you look at the basis of Bilski. Bilski says – again, the Federal Circuit in Bonk relied upon mental steps. Now, the Supreme Court could have just said, yeah, that's perfectly fine. That's not what they did. They came out with a new approach to abstract, which I think is – which is not just I think is unworkable. It's totally unworkable. No one's been able to define this idea called inventive concept significantly more as a term without meaning. As a matter of fact, I'm looking even for – I haven't been able to find a single piece of case law, either Supreme Court going all the way back to let's say just past Hotchkiss v. Greenwood. Hotchkiss v. Greenwood talked about invention, but invention there is discussed in terms of non-obviousness. Since then it broke out to be a separate meaning. In 1952, Congress enacted the 52 Patent Act to do away with this term of invention. The Supreme Court in 1966, Gramby v. John Deere, affirmed that the idea of invention was a meaningless and unhelpful test. It also confirmed that Congress wrote out invention in the Patent Law in 1952. And even more interesting, it talked about that Congress – Mr. Mathis, this discussion about the word invention and how it came up and how it came to be in old case law, what does that have to do with the Alice Mayo framework that we're now all living under? Okay, because there's no difference between invention and inventive concept. Invention was – Supreme Court rejected invention in 1966, Gramby v. John Deere. What I'm trying to figure out is whether the argument you're raising now is really an argument you need to be making to the Supreme Court rather than to this panel this morning. Well, Your Honor – What are we supposed to do about the fact that we are living in a world right now where we have this two-part framework where we do have to look for an inventive concept? Well, Your Honor, you're looking for Harvey the Rabbit, something that doesn't exist. There's no such thing as inventive concept. Nothing. No court decision has ever defined it. Nobody at the Patent Office knows what it means. It's just a – as a matter of fact, Judge Giles Rich, who wrote the 52 Patent Act along with Pat Federico, called this whole idea of invention a capricious judicial veto of patent. And again, Justice Stevens reinvented invention and inventive concept in Fluke. He decides, oh my gosh, there has to be some sort of inventive aspect in 101. He doesn't cite any reason for it. He just pulls it out of nowhere. Says, oh gosh, you have to have some sort of inventive concept in 101. There is no basis in statute or constitution that allows for this. None. And if you give me one moment, Your Honor, there's a 1997 case, Washington v. Glucksberg, that talks about when the courts are allowed to – I'm sorry. You said Washington against Glucksberg? Glucksberg, yes, Your Honor. Oh, okay. 1997. Yeah, no, I hadn't – I don't think I've ever heard that referred to in a patent case, but go on. Well, it talks about, in general, when courts are allowed to sit there and rewrite statutes or create exceptions and so forth. And the standard that the Supreme Court came out with this is summarized – let me quote. First, we have regularly observed that due process law specifically protects those fundamental rights and liberties which are objectively, quote, deeply rooted in this nation's history and tradition. And in this case, there's nothing in the 14th Amendment or 5th Amendment or any part of the Constitution that expressly allows for the courts to rewrite the patent statutes. And if there's anything that's deeply rooted in this nation's history and tradition, it's never been explained to anyone. However, Your Honor, I want to present a – I want to present an opportunity for this court. And I understand that, you know, we live – as you said and properly said, we live in this two-part test where we look for the inventive concept. And in this case, because there's no such thing as an inventive concept, I say here's a unique opportunity that with this case as to why you should overturn this case, not just based on Bilski, but based on 5th Amendment due process. Specifically, by stating that there's no such thing as inventive concept, it's capricious, arbitrary, it has no meaning, it therefore violates constitutional due process, you know, make this determination. Show it in an opinion. The Supreme Court will take this case. The Supreme Court will therefore be forced to either define the term or admit that it has no meaning. So what I'm offering you, and you're right, this is a two-part test. We are living in, I think, an insane and unworkable jurisprudence. And I think it's ill-thought-out. It's ill-based in anything in the constitutional. But here you have an opportunity to ask the Supreme Court to clarify. And again, if you base this on constitutional due process, I'm pretty sure the Supreme Court will take it. You're into the rebuttal time that you reserve, if you want to stop here. I'm done here, Your Honor. Okay, we'll hear from Ms. Lateef now and get back to you in a bit. Thank you. May it please the Court. Supreme Court and Federal Circuit precedent are binding on the Board. And as a result, the Board properly looks at the Alice-based one-on-one inquiry to determine that Killian's claims are patent-eligible. Under Step 1, the Board did what Alice did, what Mayo did, and what this Court has done since Alice. And it looked at Representative Claim 1 as a whole and determined that it was directed to an abstract idea, namely mental processes. And in particular, a search algorithm that identifies people who are eligible to receive Social Security Disability Insurance benefits and who are not receiving them. This idea that somehow mental processes is no longer a proper basis is false. That comes from Mayo, that comes from Benson, who was mentioned in the fluke. It also comes from this Court's own precedent. There is a cyber source, a fair warning case, smart gene. This was a proper analysis by the Board following the precedent that is binding upon it. Federal Circuit precedent, Supreme Court precedent. Can you address? I think Mr. Mathis relied rather heavily on Bilski. Can you talk about that? Well, I don't really understand. To be honest, Your Honor, I don't understand why he suggests that Bilski somehow overturns mental processes. I don't see that anywhere. I don't know where that is. I thought that was, you know, a machine test. I'm just, I'm not sure what his point is to address other than to say that mental processes is in fact rooted in Supreme Court case law. You have Benson, you have Mayo, you have fluke, and you have this Court who has identified mental processes as being a part of an abstract idea in cyber source and some of the other cases that I mentioned. In addition, what the Board did under the second test was it looked at the added elements in Representative Claim 1 and found that they merely recite generic computer components. So as a result, in considering the two steps of Alice, found that Killian's claims are not patent eligible under Section 101. This idea that somehow we're supposed to overturn existing law, Killian has failed to establish that the precedent that this Court has is inconsistent with Supreme Court law such that there should be some sort of en banc review or the like. There's nothing here to Killian's arguments. He doesn't really attack the findings of the Board as much as saying somehow that the law that exists is wrong. And as we sit here today, that can't be changed. The Board followed the law as it exists. And as a result, properly found that there is no technological improvement here of this method of identifying people who need SSDI benefits. The computer was used simply as a tool for this method to work, and therefore the claims are patent eligible. To the extent this Court has no further questions, I respectfully ask that it affirm the Board's decision. Thank you. Your Honor, can you hear me? Yes. Go ahead, Mr. Mathis. Welcome back. I didn't realize I was muted. Okay, shall I start, Your Honor? Yes, please. Okay, first of all, when it comes to the Board declaring the claims abstract, it's just a completely capricious exercise. It's not abstract because it's abstract. It's not abstract because of evidence. Evidence points to this being non-routine, non-conventional, totally unknown, before. Forget the computer. My apologies, Your Honor. Apologies. Anyway, it is just nothing more than a capricious declaration. The second part about, let's say, what is significantly more and what is abstract, the PTAB just says, well, it's somewhere out there. It doesn't define these terms. It says, well, somewhere out there they're defined, and they are. Nothing more than two more capricious steps in a completely capricious process by the Patent Trial Appeal Board. Third, when it comes to overturning any case law, to the extent that I am in conflict with Alice Mayo, none of my arguments are in conflict with a single line of Alice Mayo. As a matter of fact, not all of Benson survives. Certainly not, I think, the part about Claim 8. You want to talk about mental steps? Enfish v. Microsoft does nothing more than take data, process data. Let's also go to McGrow v. Bandai. McGrow v. Bandai does nothing more than take data and process data using nothing more than conventional steps. The whole point of McGrow, using a first rule, the first rule is not defined. It's just some nefarious first rule. No one knows what it means. Weighting data, that's been done forever. I literally have been working on electronic systems weighting data as far back as 1982. So if you're going to sit there and say that all these are conventional steps individually, and forget that all put together they make something greater than the individual, then you can't say that McGrow v. Bandai is a good decision. Personally, if you think about it, McGrow v. Bandai. No computer mentioned, no hardware. It could have begun completely within the human mind, and yet was held patent eligible. Now, on the other hand, McGrow v. Bandai, I mean Enfish v. Microsoft does mention a computer. I disagree with the analysis. I think the outcome is correct, even though I disagree with the analysis. There's no advantage to self-referential tables. It was an assertion by the patentee that does not follow it with the lightest of analyses. So therefore, Your Honor, I would sit there and say that nothing I'm asking. I'm not asking this court to overturn anything that is in at least the Alice Mayo framework. And what I am asking this court to do is to force the United States Patent and Trademark Office to adhere to basic concepts of due process of law. That's it. And without due process of law, without a process that – I mean, again, it's nothing more than arbitrary and capricious. All these terms, as used by the patent office, are arbitrary and capricious. And even with respect to some of your own decisions, Your Honor, I disagree with the analysis, even though I agree with the outcomes. Electric power groups, no computer. It could have all been done in the human mind. Investigate. No computer could have been completely done in the human mind and could have and I think should have been addressed under mental steps. And that said, I disagree. Mr. Matheson, I got lost there. Are you saying that there is a mental steps doctrine that should bar patents from eligibility? Not the one you're thinking of, Your Honor. I'm thinking of mental steps as they completely happen within the human mind. It's completely as Congressman Thomas Nassie discussed in his own proposed language. If a machine is involved and a computer is involved, it can't be done in the human mind. And that sort of fiction, let's say legal fiction, should not be tolerated. But let's stick to real mental process that can only be done in the human mind. With that, I think my time is up, Your Honor. Okay. Thank you very much. Your Honors, thank you so much for your time. Have a wonderful day. You too. Thank you. Thanks to both counsel. Case is submitted. And the court will stand in recess. Also, thank you for your time. Court will stand in recess.